UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIBU MEDIA LLC,

               Plaintiff,                             Civil Action No. 12-cv-12598

        v.                                   District Judge Mark A. Goldsmith
                                         Magistrate Judge Laurie J. Michelson

JOHN DOES 1-28,

               Defendants.

_____/

## REPORT AND RECOMMENDATION DENYING IN PART AND GRANTING IN PART JOHN DOE 18'S AND JOHN DOE 25'S MOTIONS TO SEVER, TO QUASH SUBPOENA, FOR A PROTECTIVE ORDER, AND/OR TO DISMISS [5, 11]

This is one of scores of suits brought by adult-film companies alleging that users of the peer-to-peer communication protocol BitTorrent have committed copyright infringement by downloading a digital copy of a pornographic movie. Plaintiff Malibu Media, LLC ("Malibu") asserts that John Does 1-28 ("Defendants") each copied a digital version of the motion picture "Silvie Eufrat Strip Poker" (the "Work") using BitTorrent software. Malibu's pre-suit investigation identified these 28 alleged infringers by their internet protocol address — a number assigned to the computer or wireless router used to download the Work via BitTorrent. Plaintiff then sought to subpoena the internet service providers (e.g., Comcast) that assigned the 28 internet protocol addresses for the name, mailing address, telephone number, e-mail address and Media Access Control address of the subscribers assigned those internet protocol addresses during the relevant time periods. (ECF No. 2.) District Judge Mark A. Goldsmith granted leave to conduct that limited discovery. It appears that at least one ISP has been served with the subpoena, and, in turn, notified at least two of their subscribers: John Doe 18 and John Doe 25.

Presently before the Court are John Doe 18's "Motion to Sever Doe Defendants 2-28 and to Quash Subpoena and/or Dismiss" (ECF No. 11, "Doe 18's Motion to Sever") and John Doe 25's "Motion to Dismiss/Sever, for Reconsideration, and for a Protective Order and/or to Quash Subpoena" (ECF No. 5, "Doe 25's Motion to Sever"). On October 17, 2012, this Court heard oral argument on these motions. Having fully considered the parties' arguments, the Court RECOMMENDS that Doe 18's Motion to Sever (ECF No. 11) and Doe 25's Motion to Sever (ECF No. 5) be GRANTED IN PART AND DENIED IN PART.[1]

## I. BACKGROUND

In a very similar case, this Court addressed the BitTorrent communication protocol at some length. *Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (Michelson, M.J.). The Court will therefore provide a condensed analysis here.

A digital movie file is distributed using the BitTorrent protocol essentially as follows. First, an individual with BitTorrent software obtains a copy (perhaps lawfully) of the digital movie file. This individual, known in BitTorrent parlance as the "initial seeder," uses his BitTorrent software to divide the large digital movie file (perhaps several gigabytes) into thousands of small files known as "pieces." (*See* ECF No. 1, Compl. ¶¶ 19, 20.) The BitTorrent software also creates a unique "digital fingerprint," a 40-character alpha-numeric code, for each piece. (Compl. ¶ 21.) The software further generates a descriptor file, known as a ".torrent file"; this file includes information about the digital movie file, its constituent pieces, and each piece's digital fingerprint. (*See* Compl. ¶ 23.) The initial seeder then uploads this descriptor file (but not the large movie file) to one of

---

[1] The Court proceeds by report and recommendation because Doe 18 and Doe 25 have sought dismissal in addition to other relief.

2

various websites on the internet that host .torrent files.  (Compl. ¶¶ 27, 29.)

When a BitTorrent user is interested in downloading a movie, he can search the internet to find a .torrent file associated with the movie of interest.  (Compl. ¶¶ 27, 28.)  Once he downloads the descriptor file, his BitTorrent software uses the information in the file to locate a "swarm" of other BitTorrent users sharing pieces of the large digital movie file described by the .torrent file. (Compl. ¶¶ 24-26.)  The user joins the swarm and begins downloading pieces of the movie file from any "peer" in the swarm that has already downloaded pieces of the movie that the user has not yet downloaded (initially, any piece).  Critically, it is possible to download pieces from peers who themselves are still downloading other pieces of the movie (and thus do not have a full copy of the movie) because the BitTorrent software, by default, immediately offers for download any piece it has downloaded (and verified using the digital fingerprint).  (Compl. ¶¶ 30-34.)  That is, sharing is piecemeal.  Although a particular BitTorrent swarm may, over its lifetime, consist of thousands of peers, at any given moment, each peer is only directly sharing pieces with a small fraction of the swarm.  Once a BitTorrent user has downloaded all the constituent pieces of the digital movie file, often receiving pieces from dozens of different peers (and, in the course of downloading, uploading pieces to other peers), the BitTorrent software re-assembles the pieces to a single file.  (Compl. ¶ 35.)  The digital movie file is then viewable by the BitTorrent user.

Malibu's investigator, IPP, Ltd., has identified internet protocol addresses allegedly used to download the Work via BitTorrent. (*See* Compl. ¶ 37.)   In particular, Malibu asserts that

> 38.    IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by the SHA-1 hash value of 38B29045632EB116F6BD4FFAA96ED0E62F9A9BE4 (the "Unique Hash Number").

3

39.     The IP addresses, Unique Hash Number and hit dates contained on Exhibit A accurately reflect what is contained in the evidence logs, and show:

(A) Each Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number; and
(B) Therefore, each Defendant was part of the same series of transactions.

40.     Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to [IPP Ltd.'s] investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

41.     IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

(Compl. ¶¶ 38-42.)

## II. ANALYSIS

### A. Motion to Sever or Dismiss for Improper Joinder

Federal Rule of Civil Procedure 20 provides, in relevant part:

Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  The Court begins with the latter requirement.

4

### 1. *A Common Question of Law or Fact to All Defendants Will Arise in This Case*

Neither Doe 18 nor Doe 25 offers any developed argument explicitly directed to Rule 20(a)(2)(B)'s common-question-of-law-or-fact requirement. The Court finds that Plaintiff has adequately pled facts satisfying Rule 20(a)(2)(B). Malibu asserts the same causes of action involving the same digital file against each Defendant. (Compl. ¶¶ 11-13, 45-61.) Plaintiff has also alleged that the same investigation led to the discovery of the IP addresses allegedly associated with Defendants. (Compl. ¶¶ 36-42.) Courts have found a common question of law or fact based on similar allegations. *K-Beech, Inc. v. Does 1-31*, No. 12-CV-00088, 2012 WL 1431652, at *3 (D. Md. Apr. 24, 2012) ("Plaintiff meets this requirement [of Federal Rule 20(a)(2)(B)] in the instant action because it asserts identical claims against the Doe Defendants."); *Raw Films, Ltd. v. John Does 1-15*, No. 11-7248, 2012 WL 1019067, at *4 (E.D. Pa. Mar. 26, 2012) ("The claims against each defendant are logically related because they will feature largely duplicative proof regarding the nature of BitTorrent, the plaintiff's ownership interest in the copyright for the Work, and the forensic investigation conducted by the plaintiff. These common questions of fact are likely to arise along with the legal standards for direct and contributory copyright infringement liability.").

### 2. *Plaintiff Has Adequately Pled a Right to Relief Against the Defendants Arising out of the Same Series of Transactions or Occurrences*

In *Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (Michelson, M.J.), this Court determined that the plaintiff there, Third Degree Films, adequately pled a right to relief arising out "the same transaction, occurrence, or series of transactions or occurrences" under Fed. R. Civ. P. 20(a)(2)(A). The allegations in Malibu's Complaint are materially identical to those in Third Degree's, including a similar time span between the first and last allegedly infringing transaction logged by IPP Ltd. Therefore, the reasoning set

5

forth in *Third Degree Films* applies with equal force here, and the Court will not recount that reasoning in full. *See Malibu Media, LLC v. John Does 1-54*, No. 12-CV-1407-WJM, 2012 WL 3030302, at *3 (D. Colo. July 25, 2012) ("Given the amount of discourse already produced by courts around the country on this issue, the Court finds it unnecessary to write a lengthy opinion about whether joinder is appropriate."). Suffice it to say,

> [I]t is important to consider that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm. Thus, a defendant's "generation" of peers – peers that a defendant likely directly uploaded to – helped pass on pieces of the Work to the next "generation" of active peers. For example, it is not implausible that John Doe No. 10, who apparently participated in the swarm on July 18, 2011, shared pieces of the Work with peers that in turn, helped propagate the Work to later joining peers. Therefore, Doe No. 10 plausibly *indirectly* uploaded pieces of the work to, say, Doe No. 25 who participated in the swarm four days later. Indeed, it is beyond dispute that the initial seeder indirectly uploaded pieces of the Work to every peer in the swarm – no matter when they joined. . . .
>
> In other words, each defendant allegedly participated in the same swarm for the same digital encoding of the Work and thereby jointly contributed to the illegal distribution of the Work to others. By undoubtedly uploading to other peers in the swarm, which enabled those peers to upload to still other peers, all 36 Doe Defendants jointly contributed to either growing the swarm or maintaining its existence. Each defendant contributed to an enterprise, the sole purpose of which was to distribute a particular version of Plaintiff's Work. . . .
>
> The Court finds that under this view of the BitTorrent communication protocol, Plaintiff has pled more than Defendants have committed the "exact same violation of the law in exactly the same way." *LaFace Records*, LLC, 2008 WL 544992, at *2. Recalling that Rule 20 joinder is broad, *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966), Plaintiff has sufficiently pled "shared, overlapping facts," [*In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012)], giving rise to Plaintiff's claims of infringement to make joinder presently proper.

6

Ample case law supports this conclusion.

*Third Degree Films*, 2012 WL 2522151, at *9-10.

Doe 25 indirectly contests the continued validity of this last statement by citing a number of cases and arguing that "[t]he overwhelming trend of recent decisions across the nation — and particularly decisions regarding Malibu Media — conclude that joinder in cases such as this is improper and thus the Doe defendants must be severed from this suit."  (Doe 25's Mot. to Sever at 5.)  Aside from the fact that Doe 25 uses the word "recent" to include cases now decided almost a year ago, and that four of the seven cited Malibu Media cases were decided by the same judge, a review of the case law decided in just the past two months reveals no shortage of BitTorrent decisions (by a number of different judges) finding Rule 20(a)(2)(A)'s series-of-transactions-or-occurrences requirement satisfied.  *Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893 (E.D. Pa. Oct. 3, 2012) (Baylson, J.); *Third Degree Films v. Does 1-47*, No. 12-10761, 2012 WL 4498911 (D. Mass. Oct. 2, 2012) (Young, J.); *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB*, No. 4:12-CV-00963, 2012 WL 4387420 (S.D. Tex. Sept. 25, 2012) (Ellison, J.); *Malibu Media, LLC v. Does 1-59*, No. 1CV12-0888, 2012 WL 4465359 (E.D. Cal. Sept. 25, 2012) (Beck, M.J.); *Patrick Collins, Inc. v. John Does 1-9*, No. 12-CV-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) (Cudmore, M.J.); *Third Degree Films, Inc. v. Does 1-178*, No. 12-3858, 2012 WL 3763649 (N.D. Cal. Aug. 29, 2012) (James, M.J.); *Malibu Media, LLC v. John Does 1-5*, No. 12 CIV. 2954, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012) (Buchwald, J.).

The Court recognizes that there will continue to be disagreement on the propriety of joinder in BitTorrent cases — even within this District.  *Compare Patrick Collins, Inc. v. Does 1-23*, No.

11-CV-15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (Steeh, J.) (finding that BitTorrent "swarm" theory did not justify Rule 20(a)(2) joinder); *Patrick Collins, Inc. v. Does 1-21*, No. 12-12596 (E.D. Mich. Aug. 28, 2012) (Order Severing Doe Defendants) (Tarnow, J.) *with Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. 161 (E.D. Mich. 2012) (Randon, M.J.), *report and recommendation adopted by* No. 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012) (Hood, J.) ("This Court agrees with the Magistrate Judge's findings that, for purposes of Rule 20(a)(2)(A), joinder of the Defendants in a single action is appropriate because the claims against all Defendants are logically related and the Defendants, as members of the same BitTorrent swarm, participated in the same series of transactions or occurrences by uploading or downloading a piece of the same seed file.") *and K-Beech Inc. v. Does 1-18*, No. 11-15226 (E.D. Mich. Apr. 17, 2012) (Order Denying Without Prej. Mot. to Sever) (Cohn, J.) (denying motion to sever for reasons stated on the record); *Third Degree Films v. Does 1-36*, No. 11-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (Michelson, M.J.) *and NuCorp, Inc. v. Does 1-24*, No. 11-15222 (E.D. Mich. Oct. 18, 2012) (Op. and Order Denying Motion to Dismiss/Sever and Quash) (Komives, M.J.).  As well-stated by another court,

> [T]here is a divide among district courts regarding whether joinder is proper in cases involving multiple John Doe defendants who allegedly traded the same copyrighted file while participating in the same swarm on BitTorrent. The fact that multiple courts, in well-reasoned opinions, have arrived at opposing conclusions suggests that there is no clearly correct answer to this question.

*Next Phase Distribution, Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182, at *4 (S.D.N.Y. 2012).

In short, this Court has sided with one of two reasonable views, and Doe 18 and Doe 25 have not persuaded the Court to depart from it.

8

### 3. The Court Should Not Exercise Its Discretion to Sever Defendants at this Time

"Even if the requirements of permissive joinder are met, courts maintain the discretion to sever defendants under Rules 20(b), 21, and 42(b)."  *Next Phase Distribution*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182, at *2 (S.D.N.Y. 2012); *see also Malibu Media, LLC v. John Does 1-54*, No. 12-407, 2012 WL 3030302, at *3 (D. Colo. July 25, 2012).  Courts have considered a number of factors when deciding whether defendants joined in a BitTorrent lawsuit should be severed:

> (i) the likelihood that each John Doe defendant will assert different defenses, thereby adding factual and legal questions that are not common among all defendants, (ii) many John Doe defendants are proceeding pro se, and will therefore incur significant expense serving papers and attending depositions of all other parties to the lawsuit, (iii) the likelihood that many of the John Doe defendants are not the actual individuals who illegally downloaded the motion pictures in question, (iv) likelihood that joinder will facilitate coercive settlements among the John Doe defendants; and (v) plaintiff's avoidance of paying filing fees by pursuing mass actions.

*See Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *8 (E.D. Pa. Oct. 3, 2012).  These factors have been considered, and for the reasons set forth below, it is recommended that the Court decline to exercise its discretion to sever Defendants *at this time*.

A likelihood of disparate, individualized defenses favors discretionary severance.  In this case, however, neither Doe 18 or Doe 25 has alleged specific facts indicating that the defenses in this case are likely to be disparate.  In fact, at oral argument, the most that counsel for Doe 18 and counsel for Doe 25 could say was that their clients were unsure whether they used BitTorrent to download some or all of the Work; this is short of an outright assertion that someone else used their internet subscription to download the Work via BitTorrent.  *Cf. Third Degree Films v. Does 1-47*, No. 12-10761, 2012 WL 4498911, at *6 (D. Mass. Oct. 2, 2012) ("Even in the infancy of this action, it is clear that the Doe defendants will raise disparate defenses.  For example, Doe 34 . . . . denied

9

ever having downloaded or viewed the Film, but indicated that she provides wireless Internet for the

tenants in the adjacent unit.  Doe 5 has asserted that the infringing IP address identified on the notice

is not Doe 5's IP address, and argues that any such download was through a '"jacked or bootlegged

connection" to the ISP network.'  Doe 10 denies that he/she, or anyone in the household,

downloaded the Film." (internal citations omitted)).  Moreover, "consideration of such defenses is

premature at this stage of the proceedings": "[a]fter [P]laintiff has effected service on defendants

and defendants have responded with any relevant defenses, [the Court will then be] free to determine

whether the claims against a particular defendant should be severed pursuant to Federal Rule of Civil

Procedure 21 and/or dismissed."  *Malibu Media, LLC v. John Does 1-5*, No. 12-2954, 2012 WL

3641291, at *5 (S.D.N.Y. Aug. 24, 2012).

Logistical concerns may also favor discretionary severance.  As the court in *Hard Drive*

*Prods., Inc. v. Does 1-188* reasoned,

> The joinder would result in numerous hurdles that would prejudice
> the defendants. For example, even though they may be separated by
> many miles and have nothing in common other than the use of
> BitTorrent, each defendant must serve each other with all
> pleadings—a significant burden when, as here, many of the
> defendants will be appearing pro se and may not be e-filers.  Each
> defendant would have the right to be at each other defendants
> deposition—creating a thoroughly unmanageable situation.  The
> courtroom proceedings would be unworkable—with each of the 188
> Does having the opportunity to be present and address the court at
> each case management conference or other event. Finally, each
> defendant's defense would, in effect, require a mini-trial.  These
> burdens completely defeat any supposed benefit from the joinder of
> all Does in this case, and would substantially prejudice defendants
> and the administration of justice.

809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011).

But in this case, the number of Defendants is not obviously too numerous: 27 after the

10

voluntary dismissal of one Defendant. *Cf. New Sensations, Inc. v. Does 1-426*, No. 12-3800, 2012 WL 4675281, at *8 (N.D. Cal. Oct. 1, 2012) ("Here, given that there are over four hundred Doe Defendants joined in one action based on alleged infringing activity over a two month period, this Court finds that there would be significant manageability issues."). There may be additional dismissals and the Court does not yet know how many Defendants will ultimately appear after service. *See Patrick Collins, Inc. v. John Does 1-79*, No. 12-10532, 2012 WL 3648410, at *8 (D. Mass. Aug. 22, 2012) (declining to address defendants' severance argument, noting that "[t]he analysis depends to some extent upon factors (such as the defenses asserted by the eventual defendants and the number of defendants identified and appearing) not yet known."). In fact, Malibu asserts that,

> From Plaintiff's experience, approximately 10% of all Doe Defendants result in a discovery failure when the Internet Service Provider ("ISP") is unable to correlate an IP address with a person. Second, Plaintiff will often not pursue its claims against many Doe Defendants. As an example, once receiving discovery Plaintiff will learn that some Doe Defendants are active duty military, elderly, a coffee shop with open wireless, or have some other circumstance that would prevent Plaintiff from pursuing its claims. This will inevitably reduce the number of Defendants joined together.

(ECF No. 16, Pl.'s Resp. to Doe 18's Mot. to Sever at 16.)

Further, both Doe 18 and Doe 25 are represented by counsel who are e-filers. Further still, while Defendants may have the *right* to be at various proceedings, including each others' depositions, the Court is not yet in a position to determine Defendants' *interest* in exercising this right. Defendants in this case may ultimately be represented by a handful of counsel who will appear for hearings, depositions, and conferences on Defendants' behalf. Simply stated, the Court believes the best course is to continue to assess whether the case has become logistically unwieldy

11

as it progresses.  *See W. Coast Prods., Inc. v. Does 1-351*, No. 4:12-CV-00504, 2012 WL 2577551, at *3 (S.D. Tex. July 3, 2012) ("If Plaintiff proceeds in this action or elsewhere against specific named Defendants, those Defendants may raise applicable joinder issues at that time.  It may well be unwieldy to have one case with hundreds of defendants with differing explanations for their connections to the IP addresses identified by Plaintiff, but the Court does not reach that issue now.").

Both Doe 18 and Doe 25 emphasize the possibility of Malibu engaging in "abusive settlement tactics."  (Doe 25's Mot. to Sever at 12; *see also* Doe 18's Mot. to Sever at 1.)  Another court recently summarized the potential for such abuse:

> Even though [Plaintiff] Next Phase believes it has correctly identified the alleged infringers by tracking their IP addresses, an IP address does not necessarily correlate to a particular alleged infringer because several people may access the same IP address:
>
>> [T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time.  An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . . .  Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call.
>
> [*In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11 Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012)].  Aside from the obvious concerns associated with catching so many potentially uninvolved individuals in the wide net of this litigation, there is also the prospect that, even if a John Doe did not download the Motion Picture, he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the

12

alleged illegal trading of a pornographic film.

*Next Phase Distribution, Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182 at *5
(S.D.N.Y. 2012); *see also Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012)
("Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of
individuals who actually downloaded or shared copyrighted material."); *Malibu Media, LLC v. John
Does 1-54*, No. 12-CV-1407, 2012 WL 3030302, at *5 (D. Colo. July 25, 2012) ("Courts across the
country have observed that Plaintiff (and other companies involved in this type of litigation) do not
seem interested in actually litigating their copyright claims. Rather, they appear to be using the
federal courts only to obtain identifying information for the ISP owners and then attempting to
negotiate a quick settlement.").

The Court is troubled by and has considered the possibility of Malibu "strong-arming"
Defendants — including those ISP subscribers who may not have actually downloaded the Work
— into settlements. But as this Court and others have previously reasoned, and as another court has
since reconfirmed, in the absence of case-specific allegations of coercion and/or misidentification,
discretionary severance on that basis is not warranted:

> The most common discretionary consideration invoked as a reason to
> prohibit joinder has been the potential for coercion. That is, there is
> a fear that regardless of a defendant's actual culpability, "he may feel
> compelled to settle the lawsuit confidentially in order to avoid the
> embarrassment of being named as a defendant in a case about the
> alleged illegal trading of a pornographic film." [*Next Phase
> Distribution, Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012
> WL 3117182 at *5 (S.D.N.Y. 2012)]. Stories that have emerged
> concerning coercive litigation tactics employed by plaintiffs in
> several cases have only heightened these fears. . . .

> While we are certainly attuned to these concerns, we believe they are
> mitigated in this action for several reasons. First, none of the
> instances of improper litigation tactics that have been brought to our

13

> attention involve plaintiff [Malibu Media] or plaintiff's counsel. We
> are reluctant to prevent plaintiff from proceeding with its case based
> only on a "guilt-by-association" rationale. *Third Degree Films v.
> Does 1-36*, No. 11 Civ. 15200, 2012 WL 2522151, at *11 (E.D.
> Mich. May 29, 2012). Second, and more importantly, this Court and
> others have permitted defendants to litigate the BitTorrent cases
> anonymously upon a proper request to do so. The ability of a John
> Doe defendant to ensure that his name will not be publicly associated
> with the case removes much, if not all, of the leverage that a plaintiff
> would possess to unduly coerce him into settlement.

*Malibu Media, LLC v. John Does 1-5*, No. 12-2954, 2012 WL 3641291, at *4 (S.D.N.Y. Aug. 24,

2012). For reasons set forth below, the Court will recommend that Doe 18 and Doe 25 be allowed

to proceed anonymously in this litigation (at least initially). Moreover, at oral argument, Malibu's

counsel informed the Court that his practice — which includes BitTorrent litigation in this District

and two others — does not involve sending settlement demand letters to defendants. Counsel also

stated that Malibu does not have an interest in suing those who did not have some type of

participation or knowledge of the infringement. And with these safeguards against coercion, the

reasoning of *Malibu Media, LLC*, 2012 WL 3641291, at *4 applies to this case at this stage of the

litigation.

Further still, as other courts have noted, Doe 18 and Doe 25 have some other protections

against coercive settlements. For one, they are represented by counsel. *See Patrick Collins, Inc. v.*

*John Does 1-54*, No. CV-11-1602, 2012 WL 911432, at *4 (D. Ariz. Mar. 19, 2012) ("Other courts

have issued protective orders in BitTorrent-related copyright infringement suits in order to prevent

improper tactics such as personal telephone calls from the Plaintiff to pro se Defendants demanding

settlement. . . . John Doe 6 is represented by counsel, and faces a lower probability of such

treatment."). For another, if Defendants are able to demonstrate that someone else used their IP

address to download the Work via BitTorrent, they may be able to collect some of their litigation

14

costs from Plaintiff:

> In the event Plaintiff's allegations cannot be sustained, the five John Does will have adequate remedies to recover most, if not all, of these litigation expenses and/or damages from Plaintiff, such as a Rule 54 motion for costs, a lawsuit for abuse of civil process, a Rule 11 motion for sanctions, and a motion to recover excessive costs under 28 USC § 1927.  More fundamentally, as mentioned above, because this is a copyright case, a successful defense will likely result in an award of attorney's fees to any John Doe who prevails under 17 U.S.C. § 505.

*Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *10 (E.D. Pa. Oct. 3, 2012); *see also id.* at *9 ("Although the Court cannot prevent the parties from settling these claims, the Court assumes that Plaintiff will welcome this opportunity to prove its claims promptly pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the copyright laws, which may, if Plaintiff is successful, lead to an injunction enjoining the practices about which Plaintiff complains.  If Plaintiff decides instead to continue to 'pick off' individual John Does, for confidential settlements, the Court may draw an inference that Plaintiff is not serious about proving its claims, or is unable to do so.").

Related to the coercion argument, Doe 18, by motion, and Doe 25, by oral argument, also assert that this Court should exercise its discretion to sever Defendants because the Work at issue in this case may not even be entitled to copyright protection.  (*See* ECF No. 11, Doe 18's Mot. to Sever at 6.)  But this argument appears to be based on the analysis of one court that explained:

> [I]f [a] Motion Picture is considered obscene, it may not be eligible for copyright protection.  *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1-38,* 821 F. Supp. 2d 444, 447 n. 2 (D. Mass. 2011) (noting it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement").  In *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979), a court stated for the first time that obscene works may be eligible for copyright protection: "there

15

is good reason not to read an implied exception for obscenity into the copyright statutes." *Id.* at 854.  However, since the *Mitchell Bros.* decision, judges across the country and within this district have reached different conclusions on this issue. *Compare Devil Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174, 177 (S.D.N.Y. 1998) ("Once a court has determined that copyrighted material is obscene, there seems no reason to require it to expend its resources on behalf of a plaintiff who it could as readily be trying for a violation of the federal criminal law.") *with Nova Prods., Inc. v. Kisma Video, Inc.*, Nos. 02 Civ. 3850, 02 Civ. 6277, 03 Civ. 3379, 2004 WL 2754685, at *3 (S.D.N.Y. Dec. 1, 2004) (agreeing with *Mitchell Brothers* decision and stating that obscenity does not provide defense to copyright infringement of pornography).  Accordingly, the Court recognizes that joining 27 defendants, a substantial number of whom may have no liability in this case, in a copyright infringement case when the copyright itself might be deemed invalid, could prove to be a costly and futile exercise for *Next Phase* and the Court, and a damaging an[d] unnecessary ordeal for the John Does.

*Next Phase Distribution, Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182 at *6 (S.D.N.Y. 2012).  As another court noted, however, "other circuits that have addressed the issue have either determined or endorsed the view that the copyright laws are not content-based, and thus pornography is indeed eligible for copyright protection."  *Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *8 n.8 (E.D. Pa. Oct. 3, 2012).  Further, it is not clear which way the Does' argument cuts: if Doe 18 and Doe 25 intend to assert that the Work is not entitled to copyright protection, that defense would presumably be available to all Defendants, which, in turn, favors joinder.

Finally, the Court acknowledges the concerns about federal courts becoming "cogs in a plaintiff's copyright-enforcement business model," *Malibu Media, LLC v. Doe 1-9*, No. 2:12-cv-3623, 2012 U.S. Dist. LEXIS 89286 at *9 (C.D. Cal. June 27, 2012); but there are also contrary considerations:

Since January 2012, Malibu Media has provided the federal judiciary

16

with $118,300.00 in federal filing fees, an amount significantly more than many corporations.  Malibu Media seeks to sue roughly 600 individuals a month, or roughly one percent of the infringement it faces.  If it were forced to pay filing fees for each defendant, it would face filing fees of over $200,000 a month.  This is simply beyond its financial capabilities as a company.  In order for its litigation to have any deterrent effect, Plaintiff must sue enough people for an individual to have a reasonable belief that if they break the law, they will be penalized.

(Pl.'s Resp. to Doe 18's Mot. to Sever at 17.)

After evaluating a number of factors informing the propriety of discretionary severance, the Court believes joinder is presently proper and Defendants should at least be served with the Complaint and be required to make their (anonymous) appearance.  As the Court has tried to make clear, however, it does not intend to foreclose the possibility of severance in the future.  As the case progresses, facts may come to light that justify discretionary severance.

### B.  Motion to Quash Subpoena

Aside from joinder-based arguments, Doe 25 asserts that the ISP subpoenas served in this case should be quashed because the subscriber information provided by ISP, while necessary for service in this case, is not sufficient.  (Doe 25's Mot. to Sever at 11.)  Doe 25 cites *Boy Racer, Inc. v. Does 1-52*, No. 11-2329, 2011 WL 7402999 (N.D. Cal. Sept. 13, 2011) in support of this argument.  (*See* Doe 25's Mot. to Sever at 11.)

In *Boy Racer*, in seeking leave to conduct limited pre-Rule 26(f) discovery, Boy Racer informed the court: "[t]hrough the information they gather from the ISPs via these subpoenas, the plaintiffs are able to fully identify—i.e. retrieve name, address, telephone number, e-mail address, and Media Access Control (hereinafter 'MAC') information—each P2P network user suspected of violating the plaintif[f]'s copyright." *Id.*  After weeks passed without notice from Boy Racer that

17

it had served the complaint on the Doe defendants, the court held a case-management conference where Boy Racer "revealed for the first time that still more discovery was required." *Id.* at *2. Boy Racer explained that while it had the identifying information of the ISP subscriber, that information did not necessarily tell it who actually downloaded the work; accordingly, Boy Racer sought an inspection of the subscribers' computers and the computers of those sharing the subscribers' internet access. *Id.* at *2. The court did not view the request favorably:

> The court finds this turn of events troubling, to say the least. First, Boy Racer's insistence on additional discovery is plainly inconsistent with its prior representation to the court. There is no dispute that Boy Racer told this court that the "limited" discovery it requested consisted of nothing more than subpoenas to the ISPs. There also is no dispute that Boy Racer told the court that with the results of these subpoenas in hand it would be able to "fully identify" the person(s) suspected of violating the copyright. Now Boy Racer states that the subpoena results are in fact insufficient to "fully identify" the Doe Defendant, and that expedited discovery is merely the first step in what could prove to be an extensive, expensive, and-equally importantly-highly intrusive discovery odyssey.

> Second, this reality undermines the entire rationale behind the court's prior order granting leave to take limited early discovery. As an "extraordinary remedy," expedited discovery may not be granted where the requested discovery clearly would not uncover the identities sought. . . .

> The court cannot tolerate such legerdemain. Particularly in the context of ex parte requests, courts must rely upon the representation and proffers. There are, of course, no guarantees that discovery will lead to evidence as expected, and the court does not expect perfect foresight. But to ask at first for a limited number of ISP subpoenas, and only later to reveal that an inspection of potentially gigabytes of personal data is being sought, strikes the court as an error more egregious than that of poor foresight. Even if the court had not been told before precisely the opposite of what it is being told now, Boy Racer offers nothing to justify the almost unbounded scope of its request for additional discovery other than the inadequacy of the discovery it has taken already. This would seem to be a prototype of what others in cases such as this have labeled the classic "fishing

expedition."

*Boy Racer*, 2011 WL 7402999, at *2-3.  The Court therefore withdrew its order granting limited

discovery and denied "any pending or proposed requests for further discovery."  *Id.* at *3.

But again, the record in this case is different.  Plaintiffs have not requested additional

discovery.  Indeed, Malibu makes clear that it has not requested to search any devices:

> [*Boy Racer*] is not applicable to the case at hand.  Here, Plaintiff is
> seeking information so that it may serve and name Defendant and
> proceed with this case as with any other litigation.  Plaintiff is not
> seeking additional discovery, nor is Plaintiff attempting to mislead
> the Court that it will need additional discovery before naming and
> serving the Defendant.  The subpoena should not be quashed on the
> basis of conduct by counsel who has no relation to Plaintiff or
> undersigned and whose actions took place in an entirely different
> district.

(ECF No. 8, Pl.'s Resp. to Doe 25's Mot. to Sever at 7.)  The Court infers from this statement that

Malibu has a good faith basis to believe that searching subscribers' internet-connected devices will

not be necessary for proper service.

Additionally, as other courts have explained, the fact that the ISP-identified subscriber is not

necessarily the infringer is not grounds to quash a subpoena served on the ISPs:

> A general denial of engaging in copyright infringement is not a basis
> for quashing the plaintiff's subpoena.  It may be true that the putative
> defendants who filed motions and letters denying that they engaged
> in the alleged conduct did not illegally infringe the plaintiff's
> copyrighted movie, and the plaintiff may, based on its evaluation of
> their assertions, decide not to name these individuals as parties in this
> lawsuit.  On the other hand, the plaintiff may decide to name them as
> defendants in order to have an opportunity to contest the merits and
> veracity of their defenses in this case.  In other words, if these
> putative defendants are named as defendants in this case, they may
> deny allegations that they used BitTorrent to download and distribute
> illegally the plaintiff's movie, present evidence to corroborate that
> defense, and move to dismiss the claims against them.  A general
> denial of liability, however, is not a basis for quashing the plaintiff's

19

> subpoenas and preventing the plaintiff from obtaining the putative
> defendants' identifying information.

*Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 35 (D.D.C. 2011); *see also Malibu*

*Media, LLC v. Does 1-59*, No. 1CV12-0888, 2012 WL 4465359, at *3 (E.D. Cal. Sept. 25, 2012).

As noted, counsel at oral argument did not state that their clients have outright denied infringement.

Accordingly, the Court does not recommend that District Judge Mark A. Goldsmith now

revisit his decision to grant leave to serve subpoenas on the ISPs.

### C.  Motion for Protective Order

Both Doe 18 and Doe 25, as alternative relief, seek a protective order.  (*See* Doe 25's Mot.

to Sever at 10; Doe 18's Mot. to Sever at 19-20.)  Under the Federal Rules of Civil Procedure, a

court "may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

In its previous BitTorrent decision, this Court found that a protective order was not

appropriate in that case:

> Defendant asks that the Court enter a protective order.  Defendant
> does not specify the basis for this request.  Nor does Defendant detail
> what type of protective order he or she seeks.  Presumably, Defendant
> seeks a protective order permitting anonymous participation in this
> lawsuit and justifies this request on the basis of being subjected to
> potential embarrassment.  The Court denies this request without
> prejudice.  *See Voltage Pictures*, 818 F. Supp. 2d at 38 ("To the
> extent that the putative defendants seek protective orders to prevent
> disclosure of private identifying information, the Court has held that
> the putative defendants' First Amendment rights to anonymity in the
> context of their BitTorrent activity is minimal and outweighed by the
> plaintiff's need for the putative defendants' identifying information
> in order to protect its copyrights."); *Patrick Collins, Inc. v. John Does
> 1-54*, No. 11-1602, 2012 WL 911432, at *4 (D. Ariz. Mar. 19, 2012)
> ("Defendant claims he would prefer that the proceedings take place
> under seal, but offers no reason that disclosing the fact that a
> particular IP address is associated with his name constitutes

20

annoyance, embarrassment, oppression, or undue burden. Although the Court acknowledges that there is some social stigma attached to consuming pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove. The nature of the allegations alone do not merit a protective order.").  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *see also In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983) ("Only the most compelling reasons can justify non-disclosure of judicial records.").  If Defendant can provide the Court with reasons particularized to his or her situation that justify proceeding anonymously, or at least provide some developed argument supporting the presently bare request, the Court will reconsider whether a protective order is warranted.

*Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 WL 2522151, at *12 (E.D. Mich. May 29, 2012) (Michelson, M.J.).

Although the Court maintains the view that a protective order is not necessary in these suits, the Court is troubled by the fact that Doe 18 has cited authority suggesting that a significant portion of the subscribers identified by ISPs may not actually be the BitTorrent users who downloaded the Work.  *Digital Sin, Inc. v. Does 1-27*, No. 12-3873, 2012 WL 2036035, at *4 (S.D.N.Y. June 6, 2012) ("In another *Digital Sin* case brought by the same counsel as in this case, counsel conceded that there was a high risk of false positive identifications (that is, as many as '30% of the names turned over by the ISPs may not be those of individuals who actually downloaded or shared copyrighted material') and that there were 'horror stories' of harassing and abusive litigation techniques by some law firms." (citing *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012))).  Moreover, at oral argument, counsel for Malibu did not object to Defendants remaining anonymous in court papers at this stage of the litigation.  (*See also* Pl.'s Resp. to Doe 18's

Mot. to Sever at 4 ("Plaintiff does not object to a protective order that would enable Defendant to proceed anonymously and prevent Plaintiff from publically naming Defendant until after discovery is conducted.").)  Accordingly, the Court finds the following reasoning persuasive in this case:

> With respect to the John Does' expectation of privacy, the Court finds that any detriment to this interest is mitigated by granting their request to proceed anonymously.  It bears emphasis that the Court is proceeding in an abundance of caution.  The record suggests that the motion pictures at issue are pornographic in nature.  The John Does might thus be subject to public embarrassment upon the disclosure of the fact that their IP addresses were used to download pornographic material.  As discussed above, although the disclosure of subscriber information may not reveal the actual infringers in these cases, it may nevertheless allow Plaintiff to identify the actual infringers.  Further, pornography is rampant on the internet for free, and no crime has been committed as long as the pornography is exclusively adult pornography.  There is no suggestion of any child pornography in these cases.  Thus, the incidence of adult pornography being downloaded onto someone's computer is not earth shattering in this day and age, although it can be obscene and embarrassing to many people.

*Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *7 (E.D. Pa. Oct. 3, 2012); *see also Sunlust Pictures, LLC v. Does 1-75*, 12 C 1546, 2012 WL 3717768, at *5 (N.D. Ill. Aug. 27, 2012) ("Sunlust will not be unfairly prejudiced because it will know Doe's true identity and can prosecute any claims that have legal merit.  The only consequence to Sunlust that proceeding anonymously will be diminution of the threat of publicly disclosing Doe's identity (thereby embarrassing Doe) as leverage to force a settlement."); *Digital Sin, Inc. v. Does 1-27*, No. 12-3873, 2012 WL 2036035, at *4 (S.D.N.Y. June 6, 2012) ("The combination of [risk of false positive identifications and stories of harassing and abusive litigation techniques by some law firms] and the nature of the copyrighted work in this case creates the possibility of undue embarrassment and harm were a Doe defendant's name to be publicly, but erroneously, linked to the illegal

downloading of the plaintiffs copyrighted work. Accordingly, the Court finds that there are sufficient grounds to issue a protective order to protect against these concerns.").  The Court emphasizes that the recommended protective order is out of an "abundance of caution," *Malibu Media, LLC v. John Does 1-16*, 2012 WL 4717893, at *7 — not because the nature of the case necessarily demands one.

## III.  CONCLUSION AND RECOMMENDATION

The Court RECOMMENDS that John Doe 18's "Motion to Sever Doe Defendants 2-28 and to Quash Subpoena and/or Dismiss" (ECF No. 11) and John Doe 25's "Motion to Dismiss/Sever, for Reconsideration, and for a Protective Order and/or to Quash Subpoena" (ECF No. 5) be GRANTED IN PART AND DENIED IN PART.  The motions should be DENIED to the extent they seek to dismiss or sever this action, and to the extent that they seek to quash the subpoenas served on the ISPs.

Doe 18's and Doe 25's motions should be GRANTED insofar that they seek a protective order.  In particular, the Court RECOMMENDS the following ORDER: Plaintiff is to refrain from naming any Defendant in any pleading or motion filed with the Court until further order from the Court in response to a proper motion by Plaintiff.  Plaintiff should exercise its discretion in filing such a motion; a proper basis includes a prima facie showing that the person to be publically named is the person who downloaded the Work via BitTorrent (as opposed to a mere subscriber of the internet-access used by the person who downloaded the Work).  Plaintiff shall further refrain from using the identifying information it obtains from the subpoenaed ISPs for purposes other than litigating this suit.

## IV.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson    
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  October 31, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document  was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 31, 2012.

s/Jane Johnson    
Deputy Clerk